**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| OLUWAKEMI ADE-FOSUDO, *individually and on behalf of all others similarly situated,*<br><br>*Plaintiff,*<br><br>v.<br><br>PREMIUM BRANDS OPCO, LLC,<br><br>*Defendant.* | Civil No. ELH-25-3764 |

**MEMORANDUM OPINION**

In this putative class action, named plaintiff Oluwakemi Ade-Fosudo, a Maryland resident (ECF 18, ¶ 11), filed suit against Premium Brands Opco, LLC ("Premium Brands"), a limited liability company organized under the laws of Ohio. ECF 1-10, ¶ 4.[1] However, without explanation, plaintiff refers to defendant throughout the suit as "Ann Taylor/Loft," "Ann Taylor," and "Loft." *See, e.g.*, ECF 18, ¶ 1; *see also id.* ¶ 12 ("Defendant Ann Taylor/Loft is a Connecticut corporation . . . .").[2] According to Premium Brands, "Ann Taylor" and "LOFT" are "two separate brands owned by Defendant." ECF 1 at 2 n.1. When referring to defendant, I shall use all the names interchangeably.[3]

[1] Throughout the Memorandum Opinion, the Court cites to the electronic pagination, except where paragraph numbers are available. Electronic pagination may not correspond to the page numbers imprinted on a particular submission.

[2] It is perplexing that plaintiff never explains the relationship between Premium Brands, Ann Taylor, and Loft. Moreover, neither party has described the nature of defendant's business or that of Ann Taylor and LOFT.

[3] Plaintiff capitalizes only the first letter of "Loft," whereas defendant refers to its brand by using capital letters, *i.e.*, "LOFT." I shall use defendant's spelling, unless quoting from plaintiff's submission.

In particular, in a "First Amended Class Action Complaint" ("Amended Complaint," ECF 18), plaintiff alleges, on her own behalf and on behalf of a class of Maryland residents (*id.* ¶ 70), that defendant violated the Maryland Commercial Electronic Mail Act ("MCEMA"), Md. Code §§ 14-3001 *et seq*. of the Commercial Law Article ("C.L."), by disseminating marketing emails containing false or misleading information in the subject lines "with the capacity, tendency, or effect of deceiving the recipient." ECF 18, ¶¶ 85–102.

Suit was initially filed in the Circuit Court for Howard County. *See* ECF 1-6. Defendant removed the case to federal court under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). *See* ECF 1 at 1. After the removal, plaintiff filed the Amended Complaint. ECF 18.

Defendant has moved to dismiss (ECF 25), supported by a memorandum. ECF 25-1 (collectively, "Motion"). Defendant presents two arguments for dismissal. First, defendant contends that plaintiff's claim is preempted by federal law. *Id.* at 12–23. Second, defendant argues that plaintiff's claim fails because she does not adequately allege that the email subject lines contained false, misleading, or deceptive information. *Id.* at 23–35. Plaintiff opposes the Motion (ECF 27, "Opposition"). Notably, she observes that this Court may lack jurisdiction because plaintiff fails to satisfy the requirements for standing under Article III of the Constitution. *Id.* at 7–10.

Defendant replied. ECF 28. ("Reply"). It argues, *inter alia*, that plaintiff has Article III standing. *Id.* at 3–5.

The Court has an independent obligation to ensure that it has subject matter jurisdiction. *See Wells v. Johnson*, 150 F.4th 289, 297 (4th Cir. 2025) (stating that "federal courts must confirm for themselves that they have jurisdiction. That duty includes ensuring that a plaintiff has standing."). Indeed, "[a] federal court cannot adjudicate a suit's merits without first ensuring it

has subject matter jurisdiction." *ColonialWebb Contractors Co. v. Hill Phoenix, Inc.*, 175 F.4th 253, 258 (4th Cir. 2026).

Accordingly, this Memorandum Opinion addresses only the threshold jurisdictional question of whether the plaintiff has standing to bring this suit under Article III of the Constitution. I do not otherwise consider the merits of Motion or the Opposition.

No hearing is necessary to resolve the question of standing. *See* Local Rule 105.6. For the reasons that follow, I conclude that plaintiff lacks standing. Therefore, I shall remand this case to the Circuit Court for Howard County.

## I. Factual Background

As noted, plaintiff has sued Premium Brands but, throughout the suit, she refers to the defendant as "Ann Taylor," "Ann Taylor/Loft," or "Loft." Yet, the Amended Complaint does not explain the connection between Premium Brands and Ann Taylor or LOFT. Nor does the suit contain any description of the business of Premium Brands, Ann Taylor, or LOFT. *See generally* ECF 18. However, "a court may properly take judicial notice of 'matters of public record.'" *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). The Court takes judicial notice of the fact that both Ann Taylor and LOFT operate as retailers of women's apparel. And, as indicated, Premium Brands asserts that it owns both retailers. ECF 1 at 2 n.1.

Plaintiff alleges that Ann Taylor/LOFT repeatedly used email marketing campaigns that created a false sense of urgency for the email recipients. *See* ECF 18, ¶¶ 27–48. Defendant sent emails with subject lines representing that a sale or promotion was ending imminently, using phrases such as "'today only!'" and "'ENDS TONIGHT,'" when, in fact, the "sale always continues beyond the represented end date." *Id.* ¶ 27. Defendant would send follow-up emails purporting to "'EXTEND' the sale," when, according to plaintiff, the extension was never a

genuine extension at all. *Id.* Rather, it was part of a pre-planned marketing strategy. *Id.*

The Amended Complaint provides numerous examples. To illustrate, on September 14, 2025, LOFT sent an email to plaintiff with the subject line "'50% off everything + FREE shipping ***today only!***'" *Id.* ¶ 28 (emphasis added by plaintiff). Later that day, LOFT sent two more emails to plaintiff. *Id.* The first had the subject line "'The Fall Style Event ***ends tonight***!'" *Id.* (emphasis added by plaintiff). The second had the subject line "'IT ALL ENDS TONIGHT.'" *Id.* Yet, the following day, September 15, 2026, LOFT sent another email to plaintiff, stating "'50% off + FREE shipping is NOW EXTENDED.'" *Id.* Therefore, asserts plaintiff, the earlier emails were "false and misleading . . . ." *Id.*

The Amended Complaint provides several similar examples of **"False Urgency Emails"** sent to plaintiff. (Emphasis added by plaintiff). *Id.* ¶¶ 45, 46; *see also id.* ¶¶ 28, 29. Plaintiff alleges that these types of emails arrived during a period spanning at least the months of January 2025 through November 2025. *Id.* ¶¶ 45, 46.

Further, plaintiff alleges that defendant sent emails that would "misrepresent the contingent nature of a particular promotion." *Id.* ¶ 4; *see id.* ¶¶ 49–54. According to plaintiff, Ann Taylor would advertise that a promotion was available without qualification when, in reality, and without notification, a condition had to be met to obtain the promotion, such as an expenditure "above a certain dollar amount . . . ." *Id.* ¶ 49. Plaintiff asserts, *id.*: "This is a classic bait-and-switch tactic that entices consumers to believe the promotional offer has broader application than it truly does."

The Amended Complaint provides examples. *Id.* ¶ 50. On January 24, 2026, for instance, defendant sent plaintiff an email with the subject line "'Action Item: Take An Extra $50 Off.'" *Id.* ¶ 53(a). However, access to the discount was conditioned on a minimum spending requirement

that was not divulged in the subject line. *Id.* Plaintiff provides a similar example from October 25, 2025. *Id.* ¶ 53(b).

Plaintiff received emails from Ann Taylor and LOFT between January 1, 2025, and January 24, 2026. ECF 18, ¶¶ 65, 69. But, the Amended Complaint does not allege that defendant's emails were either unsolicited or unwanted. *See generally* ECF 18. Rather, plaintiff alleges that she "has an account" with Ann Taylor and LOFT, and she asserts that she has purchased products from the websites for both Ann Taylor and LOFT. *Id.* ¶ 66. However, she does not allege that she made any purchases because of any email with an allegedly false or misleading subject line. *See generally* ECF 18.

According to plaintiff, Ann Taylor knew or had reason to know that Maryland residents were among the recipients of these emails. *Id.* ¶¶ 55–63 (Section C). Plaintiff alleges that defendant had access to this information through several methods. First, plaintiff alleges that email addresses would be associated with street addresses for any person who had placed an online order with defendant. *Id.* ¶ 57. Second, plaintiff alleges that defendant encouraged online shoppers to create accounts, which would include this information. *Id.* ¶ 58. Third, plaintiff alleges that defendant gathers "geocoordinates and IP addresses" from anyone who interacts with links in defendant's commercial emails. *Id.* ¶ 59. Fourth, plaintiff alleges that defendant uses "online tracking technologies" to identify and locate consumers who interact with its emails or visit its websites. *Id.* ¶ 60. Fifth, plaintiff alleges that defendant contracts with third parties to profile potential and actual customers, including email addresses and physical locations. *Id.* ¶ 61. Finally, plaintiff alleges that defendant knew or should have known that its emails would reach Maryland residents due to its physical presence in the State and the volume of marketing emails it sends nationally. *Id.* ¶ 62.

Plaintiff seeks class certification, statutory damages of $500 for each violation, attorneys' fees, costs, and any other relief available under Maryland law. *Id.* ¶¶ 85–102.

Additional facts are included in the Discussion.

## II. Legal Standards

### A. Removal

Under 28 U.S.C. § 1441(a), the general removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" may be "removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." But, "removal jurisdiction raises significant federalism concerns." *Mulcahey v. Columbia Organic Chemicals Co.*, 29 F.3d 148, 151 (4th Cir. 1994) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941)).

In particular, federal courts are "courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 432 (4th Cir. 2014). They "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Therefore, a federal court must presume that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper. *United States v. Poole*, 531 F.3d 263, 274 (4th Cir. 2008) (citing *Kokkonen*, 511 U.S. at 377).

Congress may not confer jurisdiction without a constitutional basis. *Shamrock Oil*, 313 U.S. at 108–09 ("The power reserved to the states under the Constitution to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution."). Accordingly, courts "must strictly construe" removal statutes and resolve all doubts in favor of remanding a case to state court.

*Mulcahey*, 29 F.3d at 151.

The removing party bears the burden of demonstrating jurisdiction and the propriety of removal. *See McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (Agee, J., concurring in part and dissenting in part), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010); *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (en banc); *Mulcahey*, 29 F.3d at 151. Therefore, "[i]f a plaintiff files suit in state court and the defendant seeks to adjudicate the matter in federal court through removal, it is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter." *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008). In this way, a failure of proof that jurisdiction exists cuts against the removing party. And, if "a case was not properly removed, because it was not within the original jurisdiction" of the federal court, then "the district court must remand [the case] to the state court from which it was removed." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 8 (1983) (citing 28 U.S.C. § 1447(c)).

Notably, "[t]he determination of jurisdiction is based only on the allegations in the plaintiff's well-pleaded complaint—not on any issue the defendant may raise." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025) (citation omitted); *see also Black v. Mantei & Assocs., Ltd.*, 145 F.4th 528, 535 (4th Cir. 2025) (same); *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 161 (4th Cir. 2023) ("A district court may limit its standing inquiry to the allegations of the complaint"). Moreover, "[j]urisdiction may not be sustained on a theory that the plaintiff has not advanced." *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 809 n.6 (1986).

### B. Article III Standing

To invoke the power of a federal court, a plaintiff must demonstrate standing under Article III of the Constitution. *See Frazier v. Prince George's Cnty, Maryland*, 140 F.4th 556, 562 (4th Cir. 2025); *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017). Indeed, "[i]t is axiomatic that the Article III standing requirements apply to all actions in the federal courts." *Benham v. City of Charlotte, N.C.*, 635 F.3d 129, 135 (4th Cir. 2011); *see In re Trump*, 958 F.3d 274, 324 (4th Cir. 2020) (en banc) ("The requirements for Article III standing are well established, and they apply in all cases regardless of the plaintiff or the particular theory of standing being asserted.") (Wilkinson, J., dissenting, joined by Agee, Niemeyer, Quattlebaum, and Rushing, JJ.), *vacated on other grounds sub nom. Trump v. D.C.*, 592 U.S. 1233 (2021).

Therefore, a case may proceed in federal court only if a plaintiff's allegations satisfy the requirements of Article III, which reflect the "constitutional minimum of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). If a plaintiff lacks Article III standing, the court lacks subject matter jurisdiction to hear the claim. *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458–59 (4th Cir. 2005). Accordingly, whether a plaintiff has Article III standing is a threshold question in every federal case. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975); *Public Interest Legal Foundation, Inc. v. Wooten*, 164 F.4th 362, 365 (4th Cir. 2026); *see also Albert v. Lierman*, 152 F.4th 554, 559 (4th Cir. 2025) ("[S]tanding and ripeness are threshold jurisdictional issues to be decided before a court considers the merits of a case[.]"); *N. Virginia Hemp & Agric., LLC v. Virginia*, 125 F.4th 472, 488 (4th Cir. 2025) (describing standing as the "threshold question").

Where a case has been removed from a state court, the court must remand the case to the state court if the plaintiff lacks standing. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be

remanded.”). Indeed, “just as a district court must dismiss a case originally filed in federal court if it ‘determines at any time that it lacks subject-matter jurisdiction,’ Fed. R. Civ. P. 12(h)(3), it also must remand whenever it reaches the same conclusion about a case that was removed from state court.” *ColonialWebb Contractors*, 175 F.4th at 258 (citing 28 U.S.C. § 1447(c)); *see Davis v. First Nat’l Bank of Pennsylvania*, SAG-24-1575, 2024 WL 4007947 at *3 (D. Md. Aug. 30, 2024) (“Where a federal court finds a case that has been removed from state court . . . does not satisfy the requirements of Article III standing, it is obligated to remand that matter to state court.”).

It is a bedrock principle that Article III of the Constitution “confines the federal judicial power to the resolution of ‘Cases’ and ‘Controversies.’” *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *see Sheppheard v. Morrisey*, 143 F.4th 232, 242 (4th Cir. 2025). Indeed, “‘no principle is more fundamental to the judiciary’s proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.’” *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)); *see Murthy v. Missouri*, 603 U.S. 43, 56 (2024) (“Article III of the Constitution limits the jurisdiction of federal courts to ‘Cases’ and ‘Controversies.’”); *So. Car. State Conference of the NAACP v. Weaver*, 181 F.4th 353, 366 (4th Cir. 2026) (same); *Rouse v. Fader*, 171 F. 4th 272, 280 (4th Cir. 2026) (“Federal courts may resolve only ‘Cases’ and ‘Controversies.’ U.S. Const. art. III, § 2, cl. 1. Among other things, this limitation on the power of federal courts requires a plaintiff to have ‘standing’ to bring suit.”); *Opiotennione v. Bozzuto Mgmt. Co.*, 130 F.4th 149, 153 (4th Cir. 2025) (“Article III of the constitution limits the judicial power of the United States to ‘Cases’ and ‘Controversies.’”).

A “case or controversy exists only when at least one plaintiff” establishes standing to sue.

*Murthy*, 603 U.S. at 57 (citing *Raines*, 521 U.S. at 818). Notably, "the doctrine of standing [serves] as a means to implement" the case or controversy requirement. *Laufer*, 60 F.4th at 161; *see TransUnion*, 594 U.S. at 423 ("For there to be a case or controversy under Article III, the plaintiff must have . . . standing."); *Spokeo*, 578 U.S. at 338 ("Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."); *So. Car. State Conference of the NAACP*, 181 F.4th at 366 ("To fulfill the case-or-controversy requirement, a plaintiff must have standing—a 'personal stake' in the suit she brings."). In other words, "[t]he standing inquiry asks whether a plaintiff ha[s] the requisite stake in the outcome of a case." *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 187 (4th Cir. 2018).

Federal courts "do not adjudicate hypothetical or abstract disputes." *TransUnion*, 594 U.S. at 423. A federal court may resolve only "a real controversy with real impact on real persons." *American Legion v. American Humanist Assn.*, 588 U.S. 29, 87 (2019) (Gorsuch, J., concurring in judgment). When there is no case or controversy, "the court's subject matter jurisdiction ceases to exist." *S.C. Coastal Conservation League v. U.S. Army Corps. of Eng'rs*, 789 F.3d 475, 482 (4th Cir. 2015); *see Gardner v. GMAC, Inc.*, 796 F.3d 390, 395 (4th Cir. 2015) (same). In the absence of a case or controversy, "the courts have no business deciding [the case]." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006).

To establish standing under Article III of the Constitution, a plaintiff must satisfy three elements: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 594 U.S. at 423 (citing *Lujan*, 504 U.S. at 560–61); *see Food and Drug Admin. v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 380 (2024); *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181,

199 (2023); *Poppleton Now Cmty. Ass'n, Inc. v. La Cite Dev., LLC*, 175 F.4th 455, 462 (4th Cir. 2026); *Rouse*, 171 F.4th at 280; *Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 420 (4th Cir. 2025). Requiring a plaintiff to demonstrate these three elements "ensures that federal courts decide only 'the rights of individuals,' and that federal courts exercise 'their proper function in a limited and separated government.'" *TransUnion*, 594 U.S. at 423 (citations omitted).

At the pleading stage, to establish standing, a plaintiff must "'clearly allege facts demonstrating'" an injury in fact. *Opiotennione*, 130 F.4th at 153 (citation omitted). When standing is challenged on the pleadings, "a court 'accept[s] as valid the merits of [the plaintiff's] legal claims.'" *Laufer*, 60 F.4th at 161 (quoting *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 298 (2022)) (alterations in *Laufer*); *see Deal*, 911 F.3d at 187 (stating that the court accepts "'as true all material allegations of the complaint and construe[s] the complaint in favor of the complaining party.'") (citation omitted).

The requirement of Article III standing applies with no less force in the context of class actions. Although "[e]very class member must have Article III standing in order to recover individual damages," *TransUnion*, 594 U.S. at 431, the Fourth Circuit has analyzed standing in the early stages of a class action "based on the allegations of personal injury made by the named plaintiffs." *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252 (4th Cir. 2020) (internal quotation marks omitted).

In this instance, the Court's inquiry targets the "'[f]irst and foremost' of standing's three elements"—injury in fact. *Spokeo*, 578 U.S. at 338 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)); *see Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.* (*AFSCME*), 172 F.4th 361, 368 (4th Cir. 2026) (en banc). "[A]n injury in fact is 'an invasion of a legally protected interest' which is 'concrete and particularized' and 'actual or

imminent, not conjectural or hypothetical.'" *Opiotennione*, 130 F.4th at 153 (quoting *Lujan*, 504 U.S. at 560). Under Article III, "a party invoking the jurisdiction of a federal court [must] seek relief for a personal, particularized injury." *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013).

"Concreteness and particularity are two different requirements . . . ." *Opiotennione*, 130 F.4th at 153. "[A]n injury is 'particularized' if it 'affect[s] the plaintiff in a personal and individual way.'" *Id.* (quoting *Spokeo*, 578 U.S. at 339) (second alteration in *Opiotennione*); *see Food and Drug Admin.*, 602 U.S. at 381. A concrete injury is one that is "'real, and not abstract.'" *TransUnion*, 594 U.S. at 424 (citation omitted); *see Food and Drug Admin.*, 602 U.S. at 381.

"'[F]inancial harm is a classic and paradigmatic form of injury in fact.'" *Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 210 (4th Cir. 2020) (quoting *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 760 (4th Cir. 2018)). But, "[v]arious intangible harms can also be concrete." *TransUnion,* 594 U.S. at 425; *see Baehr,* 953 F.3d at 252. The Supreme Court has said, *TransUnion*, 594 U.S. at 425: "Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion." (citing, *inter alia*, *Davis v. Federal Election Comm'n*, 554 U.S. 724, 733 (2008) (disclosure of private information); *Gadelhak v. AT&T Services, Inc*., 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.) (intrusion upon seclusion), *cert. denied*, 593 U.S. 938 (2021)); *see also Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 653 (4th Cir. 2019) ("Intrusions upon personal privacy were recognized in tort law and redressable through private litigation.").

"[A] redressable injury must be traceable to a defendant's act or omission." *Rouse*, 171 F.4th at 280. The traceability prong of standing requires a plaintiff's alleged injury to be "fairly . . . traceable to the challenged action of the defendant, and not . . . the result of the independent

action of some third party not before the court." *Lujan*, 504 U.S. at 560 (citation and internal brackets omitted; alterations added); *see Murthy*, 603 U.S. at 57–58. But, "traceability does not require showing proximate causation . . . ." *Rouse*, 171 F.4th at 280 n.8 (citing *Dep't of Commerce v. New York*, 588 U.S. 752, 768 (2019)).

Of significance, the existence of an applicable statute that authorizes legal action under certain circumstances does not automatically create standing. In other words, "plaintiffs cannot establish a cognizable injury simply by pleading a statutory violation." *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 921 (4th Cir. 2022); *see Raines*, 521 U.S. at 820 n.3 ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.").

Notably, "an injury in law is not an injury in fact." *TransUnion*, 594 U.S. at 427; *see AFSCME*, 172 F.4th at 368. Congress "may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Spokeo*, 578 U.S. at 341 (citation omitted). And, Congress is "well positioned to identify intangible harms that meet minimum Article III requirements," so "its judgment is . . . instructive and important." *Id.* However, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 578 U.S. at 341. In other words, "Congress's determination that a cause of action exists does not displace [the] 'irreducible constitutional minimum' of standing." *Krakauer*, 925 F.3d at 652 (citation omitted).

In *TransUnion*, 594 U.S. at 417, the Supreme Court said: "Central to assessing

concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms." (quoting *Spokeo*, 578 U. S. at 340–41). Although there need not be "an exact duplicate in American history and tradition," a federal court is not entitled to "loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *TransUnion*, 594 U.S. at 424–25.

An injury in fact must also be actual or imminent. The concepts of actual, ongoing injury or imminent injury are "disjunctive." *Deal*, 911 F.3d at 189. Ongoing injuries are, "by definition, actual injuries for purposes of Article III standing." *Id.* The imminence requirement is a "'somewhat elastic concept.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted). Its "'purpose'" is "'to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending.'" *Id.* (citation omitted) (emphasis in *Clapper*).

A threatened injury can also satisfy Article III standing. *Beck*, 848 F.3d at 271; *see South Carolina v. United States*, 912 F.3d 720, 726 (4th Cir. 2019). However, the Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Clapper*, 568 U.S. at 409 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (emphasis and alteration in *Clapper*). Thus, "to establish Article III injury, a plaintiff must plead and prove that it has suffered (or will imminently suffer, absent a court's intervention) a concrete injury." *AFSCME*, 172 F.4th at 368.

## III. Discussion

### A.

As noted, defendant removed this case to federal court on the ground that the Court has jurisdiction under CAFA. ECF 1, ¶ 1. Plaintiff did not move to remand, nor has she challenged

the statutory basis for removal. But, as stated, the Court has an independent obligation to verify its jurisdiction. *See Wells*, 150 F.4th at 297. Indeed, "[a] federal court cannot adjudicate a suit's merits without first ensuring it has subject matter jurisdiction." *ColonialWebb Contractors*, 175 F.4th at 258; *see Steel Co.*, 523 U.S. at 94. Moreover, CAFA is a statutory grant of jurisdiction. It cannot supply a case or controversy that Article III withholds. *See Shamrock Oil*, 313 U.S. at 108–09; *Raines*, 521 U.S. at 820 n.3.

Defendant endeavors to debunk the merits of plaintiff's MCEMA claim. Ann Taylor/LOFT asserts that plaintiff "does not claim to have even noticed the subject line"; that "[h]er sole alleged injury is that the emails landed in her inbox"; and that she "does not allege that she suffered any harm from receiving the challenged emails." ECF 25-1 at 8, 21. In a footnote, defendant asserts that, "[a]lthough Plaintiff has not alleged actual injury, she does plead a concrete injury-in-fact sufficient to confer Article III standing," because "[a] nuisance injury based on the receipt of vexatious emails is sufficient to establish standing." *Id.* at 21 n.3 (citing *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1009–11 (W.D. Wash. 2019)).

In the Opposition (ECF 27), plaintiff states that she does not "take a position on whether or not she has Article III standing." *Id.* at 8. Yet, plaintiff capitalizes on defendant's repeated assertions in the Motion that "the plaintiff suffered no harm." *Id.* at 8. She argues that defendant, "by virtue of anchoring its entire argument to the position that Named Plaintiff has suffered no harm," has "called into question this Court's subject matter jurisdiction under Article III." *Id.* And, she cites decisions in which courts, including in the District of Maryland, found no standing in similar cases. *Id.* at 8–10 (citing, *inter alia*, *Asabre v. Retail Services & Systems, Inc.*, PWG-22-148, 2022 WL 4326536 (D. Md. Sept. 19, 2022)).

In Reply (ECF 28), defendant maintains that plaintiff has standing. *Id.* at 3–5. Defendant

advances four points. First, defendant describes plaintiff's decision not to take a position as a "tactic" designed to "preserve the option of a state-court forum while keeping her federal claims alive." *Id.* at 3–4.[4] Second, defendant argues that plaintiff's allegations suffice to establish standing under *TransUnion*, 594 U.S. at 424, "because she alleges conduct with a 'close relationship' to a tort." *Id.* at 4. In support, defendant cites the Fourth Circuit's observation that "Congress was operating in the vein of tort when it drafted the pre-emption clause's exceptions," *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 354 (4th Cir. 2006), and plaintiff's own characterization of defendant's conduct as "'classically in the vein of a tort.'" ECF 28 at 4–5 (quoting ECF 27 at 16). Third, defendant asserts that federal courts "routinely exercise jurisdiction over MCEMA claims and their state-law analogues," and that the Fourth Circuit in *Omega* and in *Beyond Systems, Inc. v. Kraft Foods, Inc.*, 777 F.3d 712 (4th Cir. 2015), "implicitly found jurisdiction existed before reaching the merits." ECF 28. Fourth, defendant seeks to distinguish *Asabre* on the ground that the plaintiff there "affirmatively argued that she lacked Article III standing." *Id.* at 4.

As an initial matter, whether or not plaintiff takes a position with respect to standing has no bearing on the Court's analysis. Standing is a jurisdictional requirement, and "[n]o action of the parties can confer subject-matter jurisdiction upon a federal court, and ordinary principles of consent, waiver, and estoppel do not apply.'" *Nat'l Lab. Rels. Bd. v. Constellium Rolled Prods. Ravenswood, LLC*, 43 F.4th 395, 399 (4th Cir. 2022) (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005).

Moreover, defendant's suggestion that plaintiff is pursuing a "tactic" misunderstands who

[4] Defendant's reference to "federal claims" is puzzling. ECF 28 at 4. Plaintiff asserts a single claim, which arises under Maryland law. ECF 18, ¶¶ 85–102.

bears the burden to establish standing. Defendant invoked federal jurisdiction by removing the case. As the removing party, defendant must establish that plaintiff has standing. *See Lujan*, 504 U.S. at 561; *Strawn*, 530 F.3d at 296. If defendant cannot show that plaintiff has suffered a concrete injury, remand is required. *See* 28 U.S.C. § 1447(c).

**B.**

In the Amended Complaint, plaintiff identifies twenty-five emails that were sent to her by defendant between January 1, 2025, and January 24, 2026. ECF 18, ¶¶ 45, 46, 53, 68–69. But, the Amended Complaint does not allege that plaintiff opened, read, or even noticed any of the twenty-five emails. Plaintiff does not allege that she was misled by even a single subject line, relied on one, or made, accelerated, or altered any purchase because of one. Nor does plaintiff allege that she lost money or time as a result of any email. And, she does not allege that the emails were unsolicited or unwanted, that she asked defendant to stop sending them, or that they filled her inbox, consumed data storage, or otherwise disturbed or annoyed her.

Defendant echoes this observation. It states that plaintiff "does not claim to have ever read or relied on any of the challenged subject lines," and "does not claim that any such purchases were caused by deceptive email subject lines." ECF 25-1 at 10. Further, defendant points out that plaintiff "does not even claim to have ever read these emails," *id.* at 17, and that she "does not even allege that she read Ann Taylor's or LOFT's subject lines, let alone took some subsequent action in reliance on the representations made in the subject lines." *Id.* at 20. And, in its Reply, defendant reiterates that plaintiff "never alleges that she opened, read, or relied on any of Defendant's emails," ECF 28 at 3, and "does not allege that she ever even saw the emails at issue." *Id.* at 15.

Defendant filed the Motion on March 26, 2026. ECF 25. Plaintiff filed her Opposition on

April 24, 2026. ECF 27. Defendant replied on May 15, 2026. ECF 28. On May 21, 2026, after the Motion was fully briefed, this Court considered similar allegations in the case of *Carter v. Vineyard Vines, LLC*, ELH-25-3178, 2026 WL 1429258 (D. Md. May 21, 2026).

In *Carter*, as here, the plaintiffs invoked MCEMA to challenge, *inter alia*, subject lines in emails that a sale was ending, only to be allegedly creating a false sense of urgency, followed by emails announcing that the sale had been extended. And, like the plaintiffs in *Carter*, plaintiff alleges here that she has an account with defendant, that she has made purchases from defendant, and that she receives defendant's emails. *Compare* ECF 18, ¶¶ 65, 66, *with Carter*, 2026 WL 1429258, at *22. I concluded that "mere receipt of emails with misleading or false subject lines does not, by itself, constitute a concrete injury sufficient to confer Article III standing." *Id.* at *26. That conclusion rested on several considerations.

First, applying *TransUnion* and *Spokeo*, I rejected the contention that a plaintiff suffers a concrete injury merely because the defendant sent the type of email that the legislature sought to prohibit. *Id.* at *16. Second, I considered whether the plaintiffs had alleged harm bearing a close relationship to the torts of intrusion upon seclusion, nuisance, or fraud. As to the privacy-based analogs, I observed that the decisions on which Vineyard Vines relied involved communications that the recipients had not invited, whereas the *Carter* plaintiffs "chose to open a Vineyard Vines account, provided the Company with an email address, and made purchases through that account." *Id.* at *22. And, I noted: "Nowhere do they allege that all emails were unwanted or that they ever sought to stop receiving them." *Id.* at *23. As to fraud and nuisance, I concluded that the plaintiffs had not alleged the harm-defining elements of either tort: detrimental reliance, in the case of fraud, and substantial and unreasonable interference with the use and enjoyment of property, in the case

of nuisance. *Id.* at *25–26. Moreover, I declined to permit defendant to create standing by embellishing the complaint. *See id.* at *26.

As indicated, *Carter* was decided on May 21, 2026, after the briefing of the Motion was completed. Consequently, the parties did not have the benefit of this Court's analysis in *Carter*. Nor did they have before them the decisions of other courts in this District that have since considered and resolved the issue of Article III standing in the context of MCEMA. *See, e.g.*, *Cowan v. Glamnetic*, ELH-26-3406, 2026 WL 3458236 (Nov. 13, 2026); *LaTouche v. True Religion Apparel, Inc.*, RDB-26-914, 2026 WL 2221402, at *1 (D. Md. Aug. 3, 2026); *Smith v. Lane Bryant Brands Opco LLC*, SAG-25-3766, 2026 WL 1745684 (D. Md. June 17, 2026); *Volk v. Jill Acquisition LLC*, JKB-25-3752 (D. Md. June 11, 2026); *Crooks v. Coty DTC Holdings, LLC*, RDB-26-0078, 2026 WL 1265422 (D. Md. May 8, 2026); *Mulanena v. Ulta Salon, Cosmetics & Fragrance, Inc.*, JRR-25-3753, 2026 WL 1214932 (D. Md. May 4, 2026).

Ann Taylor's reliance on *Omega*, 469 F.3d 348, and *Beyond Systems*, 777 F.3d 712, is misplaced. Defendant reasons that because the Fourth Circuit reached the merits in those cases, it "implicitly found jurisdiction." ECF 28 at 4.

*Omega*, 469 F.3d at 350, decided in 2006, concerns federal preemption of an Oklahoma email spam statute. The *Omega* Court does not discuss standing in its decision. *Id.* *Beyond Systems,* decided in 2015, concerns Maryland and California email spam statutes. *Beyond Systems*, 777 F.3d at 713. But, in *Beyond Systems*, *id.* at 715–16, the Fourth Circuit did not "implicitly" find standing; it discussed standing, in detail.

Of import, both cases were decided before the Supreme Court rejected the proposition in *Spokeo*, 578 U.S. at 341, and *TransUnion*, 594 U.S. at 424–25, that a statutory interest, by itself, suffices to establish standing. Indeed, the standing analysis in *Beyond Systems* explicitly rests on

that rejected premise. *See Beyond Systems,* 777 F.3d at 16; *see also Smith*, 2026 WL 1745684, at *2 ("*Spokeo* and *TransUnion* have since rejected [the reasoning in *Beyond Systems*]. Moreover, the Fourth Circuit has since reiterated that pleading a statutory violation does not, in itself, establish a concrete injury for standing purposes.") (citing *Garey*, 35 F.4th at 921) (alteration added).

Likewise, the out-of-circuit decisions that defendant cites are unavailing. ECF 28 at 4 n.1. The California decisions, *Chin v. Evergreen Freedom Foundation*, 764 F. Supp. 3d 924 (C.D. Cal. 2025), and *Silverstein v. Keynetics, Inc.*, 2018 WL 5795776 (C.D. Cal. Nov. 5, 2018), arose under a statute that applies only to unsolicited commercial email, and the complaints in those cases alleged that the emails were unsolicited and unwanted. *See Carter*, 2026 WL 1429258, at *21. *Harbers*, 415 F. Supp. 3d 999, proceeded on the premise that the Washington statute protects against "the nuisance of unwanted commercial e-mails." *Id.* at 1010. And, courts outside this District have reached results similar to *Carter*. *See, e.g., Nuri v. True Religion Apparel*, No. 2:25-CV-00690-LK, 2026 WL 864886 (W.D. Wash. Mar. 30, 2026); *Montes v. Catalyst Brands LLC*, TOR-25-281, 2025 WL 3485827 (E.D. Wash. Dec. 4, 2025).

Here, the Amended Complaint does not allege that the emails were either unsolicited or unwanted. *See* ECF 18. Moreover, *Harbers* and *Silverstein* were decided before *TransUnion*, 594 U.S. 413, and federal courts in Washington have since declined to follow *Harbers*. *See Montes*, 2025 WL 3485827, at *3; *Nuri*, 2026 WL 864886, at *4.

Nor does *Asabre*, 2022 WL 4326536, assist defendant. LOFT seeks to distinguish *Asabre* on the ground that the *Asabre* plaintiff "affirmatively argued" that she lacked standing, whereas Ade-Fosudo does not take a position on standing. ECF 28 at 4–5. But, Judge Grimm did not remand the case due to that concession. He concluded that the plaintiff did not assert an injury or allege facts sufficient to support a finding that the plaintiff was injured by her receipt of the emails,

and that the removing defendant therefore could not show that the plaintiff had standing. *Asabre*, 2022 WL 4326536, at *2. The issue here is the same.

In sum, a mere statutory injury, as alleged here, does not establish concrete harm for standing. *See O'Leary v. TrustedID, Inc.*, 60 F.4th 240, 243 (4th Cir. 2023) ("The intangible harm of enduring a statutory violation, standing alone, typically won't suffice under Article III—unless there's separate harm (or a materially increased risk of another harm) associated with the violation."). Plaintiff alleges nothing more than a statutory injury under MCEMA. ECF 18, ¶¶ 15, 18. The Maryland General Assembly, in its wisdom, authorizes an individual to pursue a statutory injury without proof of actual damages. *See* C.L. § 14-3003. But, that is not enough to create Article III standing. *Cf. United States v. The Commonwealth of Virginia*, ___ F.4th ___, 2026 WL 3588575, at *1 (4th Cir. Nov. 23, 2026) (recognizing a "'system of dual sovereignty'") (citation omitted).

**C.**

Defendant contends that Article III standing may be established by showing that the alleged harm bears a close relationship to a tort. ECF 28 at 5. Defendant posits that plaintiff has "wrapped herself in the language of common-law fraud" by asserting: "Defendant's alleged conduct is 'in the vein of a tort' and constitutes 'classically' tortious behavior." ECF 28 at 5 (quoting ECF 27 at 12, 16).

Ann Taylor/LOFT bases this argument on statements made by plaintiff in her Opposition. But, the determination of jurisdiction is predicated "on the allegations in the plaintiff's well-pleaded complaint—not on any issue the defendant may raise." *Royal Canin*, 604 U.S. at 26. And, "[j]urisdiction may not be sustained on a theory that the plaintiff has not advanced." *Merrell Dow*,

478 U.S. at 809 n.6. Defendant does not appear to suggest that plaintiff makes any such allegation in her Amended Complaint.

In my view, defendant conflates two distinct inquiries. A central dispute raised by the Motion is whether the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM Act"), 15 U.S.C. §§ 7701–7713, preempts MCEMA. *See* ECF 25-1 at 12–23. The CAN-SPAM Act provides that it "supersedes any statute . . . of a State . . . that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute . . . prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto." 15 U.S.C. § 7707(b)(1).[5]

Defendant contends that Congress created "a national standard," prohibiting emails with subject lines that are "(i) '*likely* to mislead a recipient' about (ii) 'a *material* fact . . . ,'" and (iii) sent with '*actual knowledge*,' or *knowledge fairly implied* on the basis of objective circumstances,'

[5] The doctrine of ordinary preemption, or conflict preemption, is rooted in the Supremacy Clause of the Constitution, art. VI, cl. 2, which provides that a federal enactment is superior to a state law, so a "state law is naturally preempted to the extent of any conflict with a federal statute." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). As a result, "[w]here state and federal law 'directly conflict,' state law must give way." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617 (2011) (citation omitted). "In such circumstances, the state law is preempted and without effect." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 475 (4th Cir. 2014) (citation omitted).

Notably, "[f]ederal preemption of state law under the Supremacy Clause—including state causes of action—is 'fundamentally . . . a question of congressional intent.'" *Cox v. Duke Energy Inc.*, 876 F.3d 625, 635 (4th Cir. 2017) (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990)). Congress may manifest its intent by, *inter alia*, explicitly defining the extent to which its enactment preempts state law. *English*, 496 U.S. at 78. In sum, ordinary preemption "regulates the interplay between federal and state laws when they conflict or appear to conflict." *Decohen v. Capital One, N.A.*, 703 F.3d 216, 222 (4th Cir. 2012).

However, this Court requires jurisdiction to resolve the issue of preemption. In other words, plaintiff must have standing under Article III. *See Albert*, 152 F.4th at 559 ("[S]tanding and ripeness are threshold jurisdictional issues to be decided before a court considers the merits of a case[.]").

of such falsity." ECF 25-1 at 13 (quoting 15 U.S.C. § 7704(a)(2)) (emphasis added by defendant). Defendant adds, ECF 25-1 at 13: "These requirements broadly mirror the elements of traditional tort theories, such as common-law claims for fraud or deceit." Moreover, LOFT argues that plaintiff's claims are preempted because "she does not plead a claim in the vein of tort." *Id.* at 16.

In *Beyond Systems*, 777 F.3d 712, the Fourth Circuit construed the exception in 15 U.S.C. § 7707(b)(1) to mean that MCEMA is not preempted because it "deals with falsity or deception in the vein of tort." *Id.* at 717. Plaintiff's use of the language of tort is, in every instance, directed at showing that MCEMA, and the conduct that it proscribes, i.e., defendant's alleged conduct, falls within this CAN-SPAM Act exception. *See, e.g.*, ECF 27 at 12, 13, 14.

However, the standing inquiry is not directed at the defendant's conduct. It asks whether the plaintiff has suffered a concrete injury, which may be a harm that "has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 424 (citation omitted); *see also AFSCME*, 172 F.4th at 368 (same). In other words, wrongful conduct of a defendant that resembles a tort does not establish that the plaintiff has suffered the harm that the tort remedies. Moreover, the Amended Complaint does not allege an injury that resembles a common law tort, such as intrusion upon seclusion, nuisance, or fraud.

As explained in *Carter*, 2026 WL 1429258, at *25: "Detrimental reliance is the harm-defining element of fraud. A plaintiff is injured not when the false statement is made, but when the plaintiff acts on it, to his or her detriment." *See*, *e.g.*, *Pruitt v. Resurgent Cap. Servs., LP*, 610 F. Supp. 3d 775, 781 (D. Md. 2022).

The Amended Complaint alleges that defendant's emails "have the capacity of deceiving consumers," ECF 18, ¶ 27; that limited-time discounts persuade customers "to purchase items

sooner than they otherwise would, purchase more or different items than they otherwise would, or forego comparison shopping," *id.* ¶ 34; that defendant "deliberately designs" its subject lines to exploit those tendencies, *id.* ¶ 26; and that the subject lines include statements "that Maryland residents would depend on in making consumer purchasing decisions." *Id.* ¶ 32. Those allegations describe how defendant's practices may generally influence consumers; they are not allegations that plaintiff was affected in "a personal and individual way." *Opiotennione*, 130 F.4th at 153. Indeed, the Amended Complaint does not allege that plaintiff made any purchase in response to any email from defendant.

The harm of nuisance is a substantial and unreasonable interference with the use and enjoyment of property. *See Poppleton Now Cmty. Ass'n, Inc.*, 2026 WL 1204639, at *3 ("Maryland law defines a private nuisance as 'a nontrespassory invasion of another's interest in the private use and enjoyment of land' that is "substantial and unreasonable.'") (first quoting *Rosenblatt v. Exxon Co.*, 335 Md. 58, 80, 642 A.2d 180, 190 (1994), and then quoting *Gorman v. Sabo*, 210 Md. 155, 159, 122 A.2d 475, 477 (1956)). In a footnote, defendant suggests: "A nuisance injury based on the receipt of vexatious emails is sufficient to establish standing." ECF 25-1 at 21 n.3. However, the Amended Complaint does not allege that the emails were "vexatious."

Plaintiff identifies six emails with false or misleading subject lines sent by Ann Taylor and nineteen such emails sent by LOFT during a period from January 1, 2025 through January 24, 2026. ECF 18, ¶¶ 45, 46, 53, 69. But, plaintiff does not allege that she was inundated by these emails, that they filled her inbox, consumed storage space, cost her time, disturbed her, annoyed her, or led her to take any action. In short, there is no allegation of harm bearing a "close relationship" to the tort of nuisance. *TransUnion*, 594 U.S. at 425.

Nor does the Amended Complaint allege harm that would support a privacy-based analog, such as intrusion upon seclusion. Intrusion upon seclusion involves invasion of "'the private solitude of another.'" *O'Leary*, 60 F.4th at 245 n.2 (citation omitted). It turns on whether the alleged invasion was non-consensual. *AFSCME*, 172 F.4th at 368–69 (citing *TransUnion*, 594 U.S. at 424–25, which identifies "intrusion upon seclusion" as a harm "traditionally recognized as providing a basis for lawsuits in American courts" and cites *Gadelhak*, 950 F.3d at 462, in which then-Judge Barrett held that a plaintiff who received unwanted text messages had standing); *see also O'Leary*, 60 F.4th at 246.

Here, plaintiff alleges that she has an account with defendant, that she has made purchases from defendant, and that she receives defendant's emails. ECF 18, ¶¶ 65, 66. She does not allege that the emails were unsolicited or unwanted or that she tried to stop them. *See O'Leary*, 60 F.4th at 245.

**D.**

In sum, the Amended Complaint alleges that plaintiff received emails whose subject lines violated MCEMA. She does not allege that the emails harmed her. As in *Carter*, 2026 WL 1429258, at *26, plaintiff alleges that she "experienced a legal wrong, but not the kind of harm that fraud or nuisance is designed to remedy." Simply put, plaintiff seeks to monetize the alleged legal wrongs at $500 per email, as the Maryland statute permits. But, "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion*, 594 U.S. at 426–27.

Accordingly, I conclude that this Court lacks subject matter jurisdiction. *See White Tail Park*, 413 F.3d at 458–59. Because the Court lacks jurisdiction, it must remand the case to State court. 28 U.S.C. § 1447(c); *ColonialWebb Contractors*, 175 F.4th at 258. However, I express no

view as to the merits of plaintiff's claim or the substantive arguments raised by defendant in the Motion.

## IV. Conclusion

For the foregoing reasons, I shall remand the case to the Circuit Court for Howard County.

An Order follows, consistent with this Memorandum Opinion.

Date: November 24th, 2026

/s/
Ellen Lipton Hollander
United States District Judge